PHILLIP A. TALBERT
United States Attorney
ROSANNE L. RUST
MICHAEL D. ANDERSON
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-CR-257 DJC |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| 21ST CENTURY DISTRIBUTION, INC., | |
| Defendant. | |

## I.    INTRODUCTION

### A.    Scope of Agreement.

The Indictment in this case charges the defendant with mail fraud, in violation of 18 U.S.C. § 1341 (Counts One through 14), and wire fraud, in violation of 18 U.S.C. 1343 (Counts 15 through 28). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant 21st Century Distribution, Inc., regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B.    Court Not a Party.

The Court is not a party to this plea agreement. Sentencing is a matter solely within the

PLEA AGREEMENT                                          1

1  discretion of the Court, and the Court may take into consideration any and all facts and circumstances

2  concerning the criminal activities of defendant, including activities which may not have been charged in

3  the Indictment.  The Court is under no obligation to accept any recommendations made by the

4  government, and the Court may in its discretion impose any sentence it deems appropriate up to and

5  including the statutory maximum stated in this plea agreement.

6  If the Court should impose any sentence up to the maximum established by the statute, the

7  defendant cannot, for that reason alone, withdraw its guilty plea, and it will remain bound to fulfill all of

8  the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

9  defense counsel, nor the Court can make a binding prediction or promise regarding the sentence it will

10  receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea.

13  The defendant will plead guilty to Counts 1-4, 6-7, 9-11, 13-14, 17-20, 23-25, and 27-28 in the

14  Indictment .  The defendant agrees that it is in fact guilty of these charges and that the facts set forth in

15  the Factual Basis for Plea attached hereto as Exhibit A are accurate.

16  The defendant agrees that this plea agreement will be filed with the Court and become a part of

17  the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw its

18  plea should the Court not follow the government's sentencing recommendations.

19  The defendant agrees that the statements made by it in signing this Agreement, including the

20  factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

21  the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

22  guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f)

23  and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this

24  Agreement generally.

### B.    Restitution.

26  The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of

27  certain offenses.  Defendant agrees that its conduct is governed by the Mandatory Restitution Act

28  pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims

1  affected by this offense, including, but not limited to, the victims covered in the factual basis, victims

2  covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. §

3  3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the

4  periods of August 2015 through April 2018. The amount of restitution will be $5,919,204.99, with the

5  liability for that amount to be joint and several with its codefendants.

6      Defendant agrees that all criminal monetary penalties imposed by the Court, including

7  restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement

8  by the government. Defendant agrees that any payment schedule or plan set by the Court is merely a

9  minimum and does not foreclose the United States from collecting all criminal monetary penalties at any

10  time through all available means.

11      Defendant further agrees that it will not seek to discharge any restitution obligation or any part of

12  such obligation in any bankruptcy proceeding.

13      Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the

14  Court.

15      **C.**    **Fine.**

16      The defendant reserves the right to argue to Probation and at sentencing that it is unable to pay a

17  fine, and that no fine should be imposed. The defendant understands that it is its burden to affirmatively

18  prove that it is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury

19  to the Probation Officer and the government in advance of the issuance of the draft Presentence

20  Investigation Report, along with supporting documentation. The government retains the right to oppose

21  the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered

22  by the Court, up to the statutory maximum fine for the defendant's offense.

23      **D.**    **Special Assessment.**

24      The defendant agrees to pay a special assessment of $8,000 at the time of sentencing by

25  delivering a check or money order payable to the United States District Court to the United States

26  Probation Office immediately before the sentencing hearing. The defendant understands that this plea

27  agreement is voidable at the option of the government if it fails to pay the assessment prior to that

28  hearing.

PLEA AGREEMENT                    3

**E.**    **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant violates this plea agreement in any way, withdraws its plea, or tries to withdraw its plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which it pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

1  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or
2  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no
3  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal
4  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by
5  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.
6  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

7  **F.**    **Forfeiture.**

8       The defendant agrees to forfeit to the United States voluntarily and immediately all of its right
9  title and interest to any and all assets subject to forfeiture pursuant to shall be forfeited to the United
10 States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2), 28 U.S.C. § 2461(c), and Fed. R. Cr.
11 P. 32.2(b).  Those assets include, but are not limited to, the following:

12            1.    Net Proceeds From The Sale Of Other Tobacco Products Located At 6255
13 Mcleod Drive, Suite 13, Las Vegas, Nevada 89120,

14            2.    Net Proceeds From The Sale Of Other Tobacco Products Located At 10879 Portal
15 Drive, Suite B, Los Alamitos, California 90720, and

16            3.    Approximately $41,274.49 Seized From Wells Fargo Bank Account Number
17 5422109032.

18       The defendant agrees that the listed assets constitutes proceeds of, and are traceable to, violations
19 of 18 U.S.C. §§ 1341, and 1343.

20       The defendant agrees to fully assist the government in the forfeiture of the listed assets and to
21 take whatever steps are necessary to pass clear title to the United States.  The defendant shall not sell,
22 transfer, convey, or otherwise dispose of any of its assets, including but not limited to, the above-listed
23 assets.

24       The defendant agrees not to file a claim to any of the listed property in any civil proceeding,
25 administrative or judicial, which may be initiated.  The defendant agrees to waive its right to notice of
26 any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a
27 claim in that forfeiture proceeding.

28       The defendant knowingly and voluntarily waives its right to a jury trial on the forfeiture of

PLEA AGREEMENT                          5

1  assets.  The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses

2  to the forfeiture of these assets in any proceeding.  The defendant agrees to waive any jeopardy defense,

3  and agrees to waive any claim or defense under the Eighth Amendment to the United States

4  Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States,

5  the State of California or its subdivisions.

6       The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any

7  defenses or defects that may pertain to the forfeiture.

8       The U.S. Attorney's Office agrees to recommend that forfeited assets be used to repay the

9  victims.  The defendant understands, however, that the U.S. Attorney's Office can only make this

10  recommendation to the Justice Department and that it cannot guarantee that the funds will be so

11  distributed.  The parties agree that any portion of net proceeds from the forfeited assets that are paid to

12  victims through the remission or restoration process, will be credited to the defendant's restitution

13  obligation.

14       **G.**    **Asset Disclosure.**

15       The defendant agrees to make a full and complete disclosure of its assets and financial condition,

16  and will complete the United States Attorney's Office's "Authorization to Release Information" and

17  "Financial Affidavit" within three (3) weeks from the entry of the defendant's change of plea, including

18  supporting documentation.  The defendant also agrees to have the Court enter an order to that effect.

19  The defendant understands that if it fails to complete truthfully and provide the described documentation

20  to the United States Attorney's office within the allotted time, it will be considered in violation of the

21  agreement, and the government shall be entitled to the remedies set forth in section II.E above.

22       Defendant expressly authorizes the United States to immediately obtain a credit report to

23  evaluate defendant's ability to satisfy any monetary penalty imposed by the Court.  Defendant also

24  authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held

25  by the U.S. Probation Office.

26       **III.**    **THE GOVERNMENT'S OBLIGATIONS**

27       **A.**    **Dismissals/Other Charges.**

28       The government agrees to move, at the time of sentencing, to dismiss without prejudice the

remaining counts in the pending Indictment.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.    Recommendations.**

1.    Fine.

The government is free to recommend any sentence it believes is appropriate under 18 U.S.C. § 3553(a).

2.    Acceptance of Responsibility.

If the United States Probation Office determines that a one- or two-level reduction in the defendant's culpability score for its full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 8C2.5(g)(2) or (3), the government will not oppose such a reduction and will so move at the time of judgment and sentencing, so long as representatives of the corporation meet with and assist the probation officer in the preparation of the pre-sentence report, are truthful and candid with the probation officer, and do not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.    Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, its attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

**IV.    ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, that is Counts 1-4, 6-7, 9-11, 13-14, for mail fraud, in violation of 18 U.S.C. § 1341:

First, the defendant knowingly devised or intended to devise a scheme or plan for obtaining

money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made as part of the scheme were materials; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

To impose criminal liability on 21st Century Distribution, Inc. for the acts of its agent, the government must also prove beyond a reasonable doubt:  (1) that the agent acted within the course and scope of his authority; (2) that the acts committed by the agent were of the kind that he was authorized to perform; and (3) that the acts of the agent were motivated, at least in part, by an intent to benefit the corporation.

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, that is Counts 17-20, 23-25, and 27-28, for wire fraud, in violation of 18 U.S.C. § 1343:

First, the defendant knowingly devised or intended to devise a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to party with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which it is pleading guilty, together with the possible defenses thereto, and has discussed them with its attorney.

To impose criminal liability on 21st Century Distribution, Inc. for the acts of its agent, the government must also prove beyond a reasonable doubt:  (1) that the agent acted within the course and

scope of his authority; (2) that the acts committed by the agent were of the kind that he was authorized to perform; and (3) that the acts of the agent were motivated, at least in part, by an intent to benefit the corporation.

## V.    MAXIMUM SENTENCE

### A.    Maximum Penalty.

The maximum sentence that the Court can impose on each of the mail and wire fraud counts, respectively, is a fine of $500,000, or not more than the greater of twice the gross gain or twice the gross loss caused by the offense; a five-year term of probation; and a special assessment of $400.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which it is pleading guilty. The defendant further agrees, as noted above, that it will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

In addition to restitution, the Court may impose as a condition of probation a requirement that the defendant corporation remedy the harm caused by the offense and eliminate or reduce the risk that the instant offense will cause future harm. The Court may also order the defendant to perform community service and develop an effective compliance and ethics program.

## VI.    SENTENCING DETERMINATION

### A.    Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

1   impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

2       **B.      Estimations Affecting Guideline Calculation.**

3       The government and the defendant agree that Chapter 8 of the Guidelines regarding the

4   sentencing of organizations will apply in this case. The parties are free to make whatever arguments

5   they wish the application of those guidelines.

6       The defendant is free to recommend to the Court whatever sentence it believes is appropriate

7   under 18 U.S.C. § 3553(a).

8                   **VII.     WAIVERS**

9       **A.      Waiver of Constitutional Rights.**

10      The defendant understands that by pleading guilty it is waiving the following constitutional

11  rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to

12  pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional

13  challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed;

14  (d) to be assisted at trial by an attorney, who would be appointed if necessary; (e) to subpoena witnesses

15  to testify on its behalf; (f) to confront and cross-examine witnesses against it; and (g) not to be

16  compelled to incriminate itself.

17      **B.      Waiver of Appeal and Collateral Attack.**

18      The defendant understands that the law gives the defendant a right to appeal its guilty plea,

19  conviction, and sentence. The defendant agrees as part of its plea(s), however, to give up the right to

20  appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not

21  exceed the statutory maximum for the offense to which it is pleading guilty. The defendant specifically

22  gives up the right to appeal any order of restitution the Court may impose.

23      Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

24  one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

25  statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

26  understands that these circumstances occur infrequently and that in almost all cases this Agreement

27  constitutes a complete waiver of all appellate rights.

28      In addition, regardless of the sentence the defendant receives, the defendant also gives up any

PLEA AGREEMENT                          10

right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate its plea(s), dismiss the underlying charges, or modify or set aside its sentence on any of the counts to which it is pleading guilty, the government shall have the rights set forth in Section II.E herein.

**C.    Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**VIII.    ENTIRE PLEA AGREEMENT**

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///
///
///
///
///
///
///
///
///
///
///

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel.

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 1/11/2024

_____
Patrick Hanly
Attorney for Defendant

### B.   Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated: 1/11/2024

_____
RAHMAN LAKHANI, PRESIDENT, ON
BEHALF OF, 21ST CENTURY
DISTRIBUTION, INC.
Defendant

### C.   Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 1/11/2024

PHILLIP A. TALBERT
United States Attorney

_____
ROSANNE L. RUST
MICHAEL ANDERSON
Assistant United States Attorneys

PLEA AGREEMENT                     12

# EXHIBIT "A"

## I.    BRIEF FACTUAL SUMMARY

From about August 2015 through April 2018, Rahman LAKHANI, acting as an officer and president of N. Ali Enterprises, Inc., located in Naperville, Illinois, and an officer and president for 21st Century Distribution, Inc., located in Las Vegas, Nevada, ("21st Century-Nevada"), 21st Century Distribution, Inc., located in Rancho Cucamonga, and 21st Century Distribution, Inc., located in Los Alamitos, California ("21st Century-Los Alamitos"), operated a scheme to evade California excise taxes on OTP sold in the State of California through false statements on sales invoices given to customers and through excise tax returns submitted to the California State Board of Equalization ("BOE"), now renamed the California Department of Tax and Fee Administration ("CDTFA").

California law required that every person, including someone located out of state, who desired to sell OTP within California had to first obtain a license from the BOE, now renamed the CDTFA. Only a person who held a valid California Tobacco Products Distributor's license could possess OTP in California upon which the tax had not been paid. When a California licensed OTP distributor sold untaxed OTP into California to another distributor, that out-of-state distributor with a California license could expressly assume the excise tax liability owed to California State BOE, or later the CDTFA. If such an arrangement existed, the out-of-state distributor was required to submit to the California State BOE (or later the CDTFA) in Sacramento, California, monthly reports reflecting the amount of untaxed OTP sold into California in the previous month and the amount of excise tax owed, together with payment in that amount. The monthly reports were generally sent by U.S. mail or common carrier, or e-mail.

With this in mind, in August 2015, LAKHANI applied for, and obtained, a California Tobacco Products Distributor's license for his Nevada OTP business, 21st Century-Nevada. Using that license, LAKHANI shipped OTP to various California OTP distributors through September 2017, and expressly assumed the excise tax liability on those shipments. When LAKHANI shipped OTP from 21st Century-Nevada, he included sales invoices that stated his company assumed the excise tax due on the OTP shipments. Despite such statements, 21st Century-Nevada did not pay all of the excise tax due to the California State BOE, or later the CDTFA, on those OTP shipments. In fact, LAKHANI failed to report on his monthly excise tax returns, which he either e-mailed or mailed to the State California BOE, or later the CDTFA, all of the OTP he sold in California upon which 21st Century-Nevada owed tax.

LAKHANI also shipped OTP, starting as early as August 2017, from 21st Century-Nevada to his other business, 21st Century-Los Alamitos, and then from 21st Century-Los Alamitos to his California customers. For these transactions, LAKHANI had 21st Century-Los Alamitos assume the excise tax liability for OTP shipments to his California customers (instead of 21st Century-Nevada). Despite that, 21st Century-Los Alamitos did not pay all of the excise tax due to the California State BOE, or later the CDTFA, on those OTP shipments. In fact, LAKHANI failed to report on his monthly excise tax returns, which he either e-mailed or mailed to the CDTFA, all of the OTP he sold in California upon which 21st Century-Los Alamitos owed tax. 21st Century-Los Alamitos held a California Tobacco Products Distributor's license from mid-July 2017 until April 2018.

## II.    SUMMARY OF EVIDENCE

A.  California OTP Law and Its Import in this Case

The tobacco excise tax for OTP in California has fluctuated over time. From August 2015 to

June 30, 2016, the tobacco excise tax was 28.13% of the wholesale (pre-tax) cost of the OTP. From July 1, 2016 through June 30, 2017, the tobacco excise tax was 27.3% of the wholesale (pre-tax) cost of the OTP.  From July 1, 2017 to April 30, 2018, the tobacco excise tax was 65.08% of the wholesale (pre-tax) cost of the OTP.

Given the high tax rate, an advantage existed in the market place for OTP distributors, like LAKHANI, and their customers who conspired to evade payment of the State excise tax.  By not paying all of the tax owed to the California State BOE (or later the CDTFA), LAKHANI increased his profits, while his California customers gained an unfair advantage over legitimate businesses.  LAKHANI's customers were able to sell their OTP at lower prices to their downstream customers, making them more competitive.

B.  Lakhani's Sales Invoices

As mentioned above, LAKHANI included sales invoices with his OTP shipments and sales into California, which falsely stated that his respective companies assumed payment of the excise taxes. Those invoices also included fake prices for the listed OTP items.  The fake prices made it appear as though LAKHANI was actually charging his California customers enough to cover payment of the excise taxes.  LAKHANI and his California OTP customers knew the prices were fake, however, and that the fake prices were meant to make it appear like the prices were legitimate.

By including prices in the invoices that seemed legitimate, and stating that one of his companies paid the excise taxes owed, LAKHANI tried to protect his customers from being detected by the California BOE, or later the CDTFA, as co-conspirators.  LAKHANI's customers could try to point to the fake prices and statement about how his company agreed to pay the excise taxes to defend against a claim that they knew he was not paying the California BOE, or later the CDTFA, the excise taxes owed on their transactions.

C.  Searches and Lakhani's Confession

In September 2017, agents conducted searches at LAKHANI's three OTP businesses:  (1) N. Ali Enterprises, Inc.; (2) 21st Century-Nevada; and (3) 21st Century-Los Alamitos.  LAKHANI was present at the 21st Century-Nevada location, and he agreed to speak with agents.

During his interview, Lakhani admitted that he was not paying the excise tax owed to California BOE, or later the CDTFA, on the OTP he shipped from 21st Century-Nevada into California and that he was lying on his excise tax returns, which he submitted by U.S. mail or e-mail.  He also admitted that the OTP either came from N. Ali Enterprises, Inc., then went to 21st Century-Nevada, and finally into California, or the OTP came straight to 21st Century-Nevada, and then was shipped into California. Records reviewed by agents showed that the defendants fraudulently concealed from state taxing authorities the amount of OTP exported from Illinois and Nevada by the two companies, N. Ali Enterprises, Inc., and 21st Century Distribution, Inc., which served to further conceal from California BOE or CDTFA the fraud.  Regardless of how it arrived in California, LAKHANI said that his sales invoices for OTP shipments directly from 21st Century-Nevada to his California customers stated that 21st Century-Nevada paid all of the excise taxes owed in California.  Agents seized 21st Century-Nevada's sales invoices, and they contained that statement about 21st Century-Nevada's assumption of the excise tax liability.

LAKHANI further admitted that he had recently started shipping OTP from 21st Century-Nevada

1  to 21st Century-Los Alamitos, and then from there, he would ship the OTP to his California customers.

2  For those transactions, sales invoices showed that 21st Century-Los Alamitos was responsible for paying the excise tax to the CDTFA.

3      D.  Use of the Mails and Wires

4  The Mailings:

| Count | Date | Content of Mailing | Recipients |
|---|---|---|---|
| 1. | October 26, 2015 | September 2015 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 2. | November 24, 2015 | October 2015 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 3. | December 14, 2015 | November 2015 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 4. | January 22, 2016 | December 2015 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 6. | April 18, 2016 | February 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 7. | June 24, 2016 | March 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 9. | August 24, 2016 | May 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 10. | January 13, 2017 | September 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 11. | January 28, 2017 | October 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 13. | November 25, 2017 | Third Quarter 2017 Quarterly Excise Tax Return for 21st Century-Rancho Cucamonga | California CDTFA Sacramento, CA |
| 14. | December 7, 2017 | September 2017 Monthly Excise Tax Return for 21st Century-Los Alamitos | California CDTFA Sacramento, CA |

The Wires:

• Using his Gmail account rlakhani78@gmail.com, Rahman Lakhani sent the following wires to the BOE, or later CDTFA, located in Sacramento, California, in furtherance of the scheme:

| Count | Date | Content of Wire | Recipients |
|---|---|---|---|
| 17. | October 14, 2016 | Email transmitting August 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 18. | March 3, 2017 | Email transmitting November 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 19. | March 3, 2017 | Email transmitting December 2016 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 20. | April 21, 2017 | Email transmitting January 2017 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 23. | June 16, 2017 | Email transmitting April 2017 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 24. | June 26, 2017 | Email transmitting May 2017 Monthly Excise Tax Return for 21st Century-Nevada | California BOE Sacramento, CA |
| 25. | September 12, 2017 | Email transmitting June 2017 Monthly Excise Tax Return for 21st Century-Nevada | California CDTFA Sacramento, CA |
| 27. | January 24, 2018 | Email transmitting August 2017 Monthly Excise Tax Return for 21st Century-Los Alamitos | California CDTFA Sacramento, CA |
| 28. | April 11, 2018 | Email transmitting August 2017 Monthly Excise Tax Return for 21st Century-Nevada | California CDTFA Sacramento, CA |

During the scheme, there were no Gmail email servers located in the State of California. The BOE, and later CDTFA email servers, during all relevant times in the Indictment were located in Sacramento, California. Therefore, every email listed in the chart above had to move in interstate to reach the BOE, or CDTFA.

For Counts 18 and 19, Rahman Lakhani was also located in the State of Illinois at the time he sent the emails listed. For Count 25, Rahman Lakhani was also located in the State of Nevada at the time he sent the email listed.

Each of the mailed and wired excise tax returns listed above contained false statements regarding the quantity and cost of the OTP Lakhani sold in the State of California during that period.

Additional Conduct in Furtherance of the Scheme:

• On or about July 1, 2017, 21st Century-Nevada backdated an invoice to June 30, 2017 for the sale of approximately $152,499.00 of OTP to a California customer.

• On or about July 18, 2017, 21st Century-Nevada backdated an invoice to June 30, 2017 for the sale of approximately $412,549.00 of OTP to a California customer.

• On or about July 25, 2017, 21st Century-Nevada backdated an invoice to June 30, 2017 for the sale of approximately $38,445.00 of OTP to a California customer.

By backdating these invoices, Lakhani falsely represented that a lower, prior tax rate applied to these shipments.

The conduct set forth above is not meant to be exhaustive and is merely an example of Lakhani's, 21st Century Distribution, Inc.'s, and N. Ali Enterprises, Inc.'s conduct in furtherance of the scheme.

As a result of the defendant's conduct, Lakhani and his corporate entities defrauded the State of California of at least $5,919,204.99 on over $20 million of OTP shipments.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is concerned, I adopt if as my own true statement.

Dated: __1/11/2024__

RAHMAN LAKHANI, PRESIDENT, ON
BEHALF OF, 21ST CENTURY
DISTRIBUTION, INC.
Defendant